IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:11CR 110 |
| | ) |
| WILLIAM BRENT SOLOMON, | ) |
| | ) |
| Defendant. | ) |

## STATEMENT OF FACTS

Had this case gone to trial, the United States would have proven each of the following facts beyond a reasonable doubt. The Government would have relied on the testimony of eyewitnesses and exhibits to prove its case. The defendant stipulates that the factual allegations contained in the pending Criminal Information and the Statement of Facts are true in every material respect, and that all the events occurred in the Eastern District of Virginia.

1. From in or about 2006, through in or about December 2010, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, the defendant, WILLIAM BRENT SOLOMON, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree with others to knowingly, intentionally, and unlawfully possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of

methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

2. WILLIAM BRENT SOLOMON was a distributor of methamphetamine. Seven cooperating sources, who either participated in drug deals with SOLOMON or witnessed him in such drug deals, have provided inculpatory evidence against him.

3. John Doe # 1, who is cooperating under a federal plea agreement also maintained ledgers, both written and electronic, of drug transactions with SOLOMON. The ledgers represented a snapshot of part of the conspiracy – from January 2006 until December 2007 (handwritten ledgers) and from December 2007 until March 2008 (PDA). SOLOMON was in the ledger book as "Brent." A review of the ledger revealed that three transactions totaling 70 grams of methamphetamine were with "Brent." Additionally, the ledgers also documented a total $6,545.00 that was transferred from Doe # 1 to SOLOMON. Doe # 1 advised that the four of the aforementioned methamphetamine transactions were purchases he made from SOLOMON. Doe # 1 met SOLOMON in 2006 in Richmond, Virginia. SOLOMON had numerous methamphetamine sources in Washington, D.C. On behalf of Doe # 1, SOLOMON to D.C., on several occasions and procured methamphetamine for John Doe. Doe # 1 also advised

that he also sent as many as three different individuals to Washington, D.C., to pick-up methamphetamine from SOLOMON. The aforementioned methamphetamine procured from SOLOMON was consumed and also resold by Doe # 1 to other members of his illicit enterprise.

4. Another cooperator, John Doe # 2, stated that he/she knew that SOLOMON was John Doe # 1's methamphetamine source and that SOLOMON lived in Washington, D.C. According to Doe # 2, Doe # 1 was procuring methamphetamine from SOLOMON and other D.C. associates on a regular basis. Doe # 2 advised that under the direction of Doe # 1, he/she traveled from Richmond, VA., to Washington, D.C., on at least 10 occasions and procured methamphetamine from SOLOMON.

5. John Doe # 3 advised that he/she also purchased methamphetamine from SOLOMON in Washington, D.C. on and off for years typically at a ¼ gram at a time. Doe # 3 stated that on at least three different occasions he/she bought an 8 ball of methamphetamine from SOLOMON and sold it for profit to Doe # 1.

6. John Doe # 4, who was intimately aware of the operations of this conspiracy, advised that on one occasion he/she traveled with John Doe # 3 to Washington, D.C., and picked up one ounce of methamphetamine from SOLOMON for Doe # 1.

7. On December 01, 2010, DEA Agents assigned to the Washington Division Office orchestrated a reverse undercover operation. A "reverse-undercover" operation involves government agents posing in an undercover capacity as suppliers of controlled substances. During these operations, undercover special agents typically are introduced to narcotics traffickers as sources of drugs by cooperating sources, who identify the special agents to the narcotics traffickers as sources of narcotics. The cooperating sources and/or undercover special agents then meet with the traffickers and negotiate prices and other matters relating to the sale. These operations usually end with the arrest of the traffickers after the delivery of narcotics to the traffickers by the undercover special agents.

8. During the reverse undercover, SOLOMON and another individual were arrested. SOLOMON purchased only 7 grams. The other individuals purchased the remainder. After his arrest, SOLOMON admitted to the agents his involvement in the aforementioned illicit transaction.

9. It is stipulated, subject to Court approval, that total amount of methamphetamine distributed by SOLOMON was at least 500 grams but less than 1.5 kilograms.

10. The defendant admits that he intentionally committed the above described acts, knowingly, that they were criminal in nature, and not by accident or mistake.

Respectfully submitted,

NEIL H. MacBRIDE
UNITED STATES ATTORNEY

By: *David J. Maguire*
David T. Maguire
Assistant United States Attorney

## DECLARATION

By my signature appearing below, I affirm under penalty of perjury that I have read and agree with the contents of this statement of facts and the same is incorporated by reference into the plea agreement. Moreover, I admit that I participated in the underlying criminal conduct as stated. This is the ____ day of May, 2011.

5-17-11
Date

WILLIAM B. SOLOMON
Defendant

I am the attorney for the defendant and I have read and agree with the statement of facts.

5-17-11
Date

John Mann, Esq.
Counsel for the Defendant